IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| BUDGET INNS OF BRIDGEPORT, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>ROHIT PATEL,<br><br>Defendant. | CV 13–306–M–DWM<br><br><br>ORDER |

Plaintiff Budget Inns of Bridgeport, LLC ("Budget Inns") filed this action seeking a declaration that Defendant Rohit Patel ("Patel") is in default of his guaranty obligations related to a lease and agreement entered into in Michigan. (Compl., Doc. 1.) Budget Inns also seeks judgment against Patel in the amount of $2,707,111.47 (joint and several with his co-guarantors) and an award of attorneys' fees, costs, and interest. (*Id.*) Now before the Court is Budget Inns's Motion for Summary Judgment. (Doc. 20.) The Court has jurisdiction under 28 U.S.C. § 1332(a)(1). The motion is granted in part and denied in part.

**BACKGROUND**

Budget Inns owns commercial property located at 6379 Dixie Highway,

Bridgeport, Michigan (the "Property"). (Patel SDF, Doc. 30 at ¶ 1.) On July 5, 2012, Budget Inns, as Landlord, entered into a lease of the Property with Bridgeport Hospitality, LLC ("Bridgeport"), as Tenant, for a term of 10 years ending on July 4, 2022 (the "Lease").[1] (*Id.* at ¶ 2.) The Lease provided for personal guarantees in Section 16.1 (the "Guaranty"):

> In consideration of Landlord's agreement to lease to Tenant, Tenant's full and timely performance of this Lease shall be guaranteed as set forth in the Guaranty set forth below.

(*Id.* at ¶ 3; Lease, Doc. 23-1 at 17–18.) Five individuals, including Patel, executed the Guaranty (the "Guarantors"). (Doc. 30 at ¶ 4; Doc. 23-1 at 17.) The Guaranty provides:

> [T]he undersigned, Vellaichamy Muthukumar, Manjula Jothi Muthukumar, Rohit Patel, Nainesh Patel and Alopi Patel (collectively, "Guarantor"), irrevocably guarantees to Landlord the full and prompt payment when due and at all times thereafter of Rent (as defined in the

---

[1] In his Statement of Disputed Facts, Patel disputes whether Bridgeport entered into the Lease because Alopiben Patel, who executed the Lease on behalf of Bridgeport, "was not a member of" Bridgeport and lacked authority to execute the Lease. (Doc. 30 at ¶ 2.) However, Patel does not offer further argument on this contention in his briefs. In his Amended Answer, Patel admitted that Bridgeport entered into the Lease but also asserted as an affirmative defense that "[d]iscovery may disclose that the Lease is not a valid and enforceable agreement." (Answer, Doc. 19 at 2, 3.) In his Preliminary Pretrial Statement, Patel raised this issue and filed the 2012 federal tax return and Operating Agreement of Bridgeport in support. (Docs. 11 at 2, 5, 11; 11-1; 11-2.) The tax return and Operating Agreement identify Bluewater Hospitality, LLC as the Manager of Bridgeport. Patel contends only Bluewater Hospitality could execute the Lease on behalf of Bridgeport, but he has not put forth any affidavits or evidence demonstrating that Alopiben Patel did not have authority to sign on behalf of Bluewater Hospitality. Budget Inns has not addressed the issue in any of its filings. Given Patel's failure to brief this issue and put forth any supporting affidavits or evidence, this issue does not present a genuine factual dispute.

Lease) and all other existing and future indebtedness and liabilities of every nature and kind, now or hereafter owing from Tenant, its successors and assigns to Landlord, and all interest and late charges accrued thereon (the "Indebtedness"). Guarantor further guarantees the full and timely performance and observance of all the covenants, terms, conditions and agreements that Tenant, its successors and assigns must perform pursuant to the Lease (this "Obligation"). The term "Lease" as used in this Guaranty shall include the Lease and all renewals, extensions and modifications thereof.

Guarantor guarantees that if Tenant, its successors or assigns shall for any reason default under the Lease, including default in the payment of Rent or Indebtedness or the performance of Obligations, Guarantor shall forthwith, without further action by Landlord against Tenant, pay such Rent or Indebtedness and arrears thereof to Landlord, and faithfully perform and fulfill all obligations. Guarantor further guarantees to pay Landlord all damages, including, without limitation, all attorneys' fees and expenses that may arise in consequence of any default by Tenant, its successors or assigns under the Lease, and/or by the enforcement of this Guaranty.

Without affecting Guarantor's obligations to Landlord hereunder, Guarantor consents that Landlord may, in its sole discretion and without notice to Guarantor, renew extend or modify th Lease at any time. Guarantor waives: (a) notice of acceptance of this Guaranty by Landlord; and (b) notice of presentment, demand for payment, protest, or of action of any nature on any default under the Lease, including the right to require Landlord to sue or otherwise to enforce payment of Rent or Indebtedness or the performance of obligations under the Lease.

All of Landlord's rights and remedies under the Lease and/or under this Guaranty are intended to be distinct, separate and cumulative, and no such right or remedy therein or herein mentioned, whether exercised by Landlord or not, is intended to be in exclusion or a waiver of any of the others. This Guaranty represents the entire agreement between Guarantor and Landlord with respect to the subject matter hereof and can only be modified, waived or terminated by a writing signed by

> Landlord. This Guaranty shall be construed according to the laws of the State of Michigan that are applied to guaranties made and to be performed in that state.
>
> If the Guarantor is more than one person, the liability of the undersigned hereunder is joint and several. This Guaranty shall be binding upon the Guarantor, and the Guarantor's heirs, executors, administrators, legal representatives, successors and assigns, and shall inure to the benefit of Landlord, its successors and assigns.

(Doc. 30 at ¶ 5; Doc. 23-1 at 17–18.)

Following execution of the Lease and Guaranty, Bridgeport took possession of the Property and began running its hotel. (Doc. 30 at ¶ 6.) In the fall of 2012, Bridgeport defaulted on certain aspects of the Lease, in part, by failing to make required payments. (*Id.* at ¶ 7.) On October 29, 2012, Budget Inns and Bridgeport entered into an Agreement Regarding Lease and Guaranty Dated July 5, 2012 (the "Agreement"). (*Id.* at ¶ 8; Agreement, Doc. 23-2.) The Agreement features signatures by all five Guarantors, (Doc. 23-2 at 3); however, Patel insists his signature is a forgery as he was never informed of the existence of the Agreement, (Doc. 30 at ¶ 8; Patel Aff., Doc. 31 at ¶¶ 10, 11). The primary function of the Agreement was to modify the payment schedule to enable Bridgeport to become current on its payment obligations. (Doc. 30 at ¶ 10.) Bridgeport defaulted on its payment obligations under the Lease and the Agreement by failing to timely make the April 5, 2013 payment. (*Id.* at ¶ 11.) Bridgeport again defaulted by failing to

make the August 5, 2013 payment. (*Id.* at ¶ 12.)

On September 11, 2013, Budget Inns filed suit in the Tenth Circuit for Saginaw County in the State of Michigan against Bridgeport and the Guarantors to recover amounts due and owing under the Lease (the "underlying action"). (*Id.* at ¶ 19; Underlying Compl., Doc. 23-5.) Bridgeport was evicted from the Property on September 26, 2013. (Doc. 30 at ¶ 13; Or. of Eviction, Doc. 30-2.) After Bridgeport and Guarantor Nainesh Patel failed to appear in the underlying action, Budget Inns moved for a default judgment. On November 18, 2013, the Michigan court held a hearing and entered Judgments against Bridgeport and Guarantor Nainesh Patel in the amount of $2,707,111.47 plus costs, fees including reasonable attorney fees, and statutory interest. (Doc. 30 at ¶¶ 20–22; Default Judms., Docs. 23-7, 23-9.) On December 2, 2013, Patel was dismissed from the underlying action for lack of personal jurisdiction, as he is a resident of Montana. (Doc. 30 at ¶ 23; Or., Doc. 23-10.) On January 18, 2014, the Michigan court also entered default judgment against Guarantor Alopi Patel. (Doc. 30 at ¶ 25.) Guarantors Vellaichamy Muthukumar and Manjula Muthukumar appeared in the suit and have subsequently on July 17, 2014, submitted a consent judgment awarding Budget Inns $1,250,000. (*Id.* at ¶¶ 26, 27; Consent Judm., Doc. 30-5.)

On December 17, 2013, Budget Inns filed this action against Patel claiming

that, based on the default judgment entered by the Michigan court against Bridgeport and under the terms of the Guaranty, Patel is jointly and severally liable for the money owed by Bridgeport to Budget Inns. (Doc. 1.)

### STANDARD

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Only disputes over facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248.

### ANALYSIS

**I. Whether Patel is liable to Budget Inns for Bridgeport's liability.**

Under Michigan law,[2] "[c]ontracts of guaranty are to be construed like other contracts, and the intent of the parties, as collected from the whole instrument and the subject-matter to which it applies, is to govern." *Comerica Bank v. Cohen*,

---

[2] The parties agree that Michigan law applies to this dispute. (Br. in Support of Mot., Doc. 21 at 10; Br. in Opposition to Mot., Doc. 29 at 8 n. 1.)

805 N.W.2d 544, 548 (Mich. App. 2010) (internal quotation marks omitted).

> [I]f contractual language is clear, construction of the contract is a question of law for the court. If the contract is subject to two reasonable interpretations, factual development is necessary to determine the intent of the parties and summary disposition is therefore inappropriate. If the contract, although inartfully worded or clumsily arranged, fairly admits of but one interpretation, it is not ambiguous. The language of a contract should be given its ordinary and plain meaning. In addition, a contract is to be construed as a whole.

*Id.* (internal quotation marks and citation omitted). In a guaranty contract, the guarantor does not "assume[] liability as a regular party to the primary undertaking" but instead is liable "depend[ing] on an independent collateral agreement by which he or she undertakes to pay the obligation if the primary payor fails to do so." *Id.* at 549 (internal quotation marks and emphasis omitted). Guarantees of payment, such as the one at issue here, are "absolute" and unconditional. *Id.*

By the plain language of the Guaranty, Patel is liable because he "guarantee[d] to [Budget Inns] the full and prompt payment . . . of Rent . . . and all other existing and future indebtedness and liabilities of every nature and kind, now or hereafter owing from [Bridgeport]." (Doc. 23-1 at 17.)

Patel argues that a genuine issue of material fact exists, insisting that the Guaranty was discharged by material alterations and is therefore unenforceable

against him. (Doc. 29 at 8.) "Any material alteration of a principal debt or obligation operates to completely discharge any guaranty of that debt or obligation, unless the guarantor consented to the alteration. Any alteration that increases the debt or obligation or extends the time for performance is material." *Wilson Leasing Co. v. Seaway Pharmacal Corp.*, 220 N.W.2d 83, 89 (Mich. App. 1974) (internal citations omitted). If there is a material alteration, "[t]hose guarantors, if any, who consented to the alteration are to be held liable for the full amount of the lease, as amended. Those guarantors, if any, who did not consent to the alteration are to be completely discharged from any liability on [the] lease." *Id.* at 90–91.

Patel insists that the Agreement materially altered the Lease by adding interest and including a consent judgment of possession, and he insists he did not consent to the Agreement. (Doc. 29 at 10–11.)

**A.    Material alteration.**

The Lease contains a provision for "late charges" in the amount of 5% of the monthly rent due, (Doc. 23-1 at 2), and the Agreement, which includes a 12-month payment schedule, contains corresponding "late penalties" of $975 each for three months, (Doc. 23-2 at 5). The late penalties are equal to 5% of the $19,500 monthly rent. The Lease does not contain a provision for "interest," yet the

Agreement contains an interest charge for 11 months totaling $2,841.33, (*id.*).
Thus, the interest charge contained in the Agreement amounts to an alteration of
the Lease.

Budget Inns argues that the alteration is immaterial because "the interest
called for in the [Agreement] was less than the amount that could have been
applied under the terms of the original Lease." (Reply, Doc. 32 at 11.) Budget
Inns asserts that the Agreement could have included late penalties for all 12
months, but instead it contained late penalties for just three months and much
lower interest charges at roughly $300 per month for the remaining months.
However, the Agreement was executed on October 29, 2012, and it provides for
late penalties for the September, October, and November 2012 payments. The
Agreement could not have imposed late penalties for the nine remaining payments
that were not yet due. Budget Inns also argues that the interest charge is
"miniscule." (*Id.* at 11.) In *Wilson Leasing*, the alteration amounted to a 23%
increase in the obligation. 220 N.W.2d at 88 (original obligation of $13,694.94
and increase of $3,129.21). Here, the alteration amounts to just a 1% increase.
(Doc. 23-2 at 5 (original 12-month obligation of $298,125.00 and increase of
$2,841.33 in interest).) However, Budget Inns fails to cite any authority
establishing that a *de minimus* increase is immaterial. Because the interest charge

does amount to an increase of the total obligation under the Lease—however small—the alteration is deemed material.

The Lease contains a provision stating that in the event of default, Budget Inns may terminate the Lease and repossess the Property, terminate Bridgeport's right of possession and repossess the Property, or have specific performance of the Lease. (Doc. 23-1 at 9–10.) The Agreement adds an executed Consent Judgment of Possession and a provision allowing Budget Inns to immediately obtain entry of the Judgment in the event of default under the Agreement. (Doc. 23-2 at 2, 6.) Thus, the Consent Judgment of Possession contained in the Agreement amounts to an alteration of the Lease.

Budget Inns argues that the alteration is immaterial because the Lease "allowed for immediate possession by [Budget Inns] in the event of [Bridgeport's] default." (Doc. 32 at 11 (citing Doc. 23-1 at 9–10).) Where immediate repossession of the Property was contemplated in the Lease, the alteration was merely procedural. *See Texaco Inc. v. Clifton*, 274 N.W.2d 486, 490 (Mich. App. 1978) ("The enactment of the mandatory program was a contingency contemplated by the parties when they entered into the agreement . . . . The enactment of the mandatory program changed the parties' duties under the terms of the contract but it did not materially alter the terms of the contract."). Because the Consent

Judgment of Possession neither increased the obligation nor extended the time for performance, *Wilson Leasing*, 220 N.W.2d at 89, the alteration is immaterial.

**B.     Consent**.

Having concluded that the interest provided for in the Agreement amounted to a material alteration, the question turns to whether Patel consented to the terms of the Agreement. Patel maintains that a genuine issue of material fact exists because his signature on the Agreement is a forgery. (Doc. 29 at 11.) However, this fact issue as to Patel's signature is immaterial because Patel consented to modification of the Lease in the Guaranty.

The Guaranty provides:

> Without affecting Guarantor's obligations to Landlord hereunder, Guarantor consents that Landlord may, in its sole discretion and without notice to Guarantor, renew, extend or modify the Lease at any time.

(Doc. 23-1 at 18.) By the clear language of the Guaranty, Patel acknowledged that Budget Inns may modify the Lease at any time, and Patel consented to any such modification without notice.

The Court of Appeals of Michigan has held a similar consent provision prevents discharge of a guarantor, "even if the modifications were material." *In re Estate of Bluestone*, 329 N.W.2d 446, 450 (Mich. App. 1982). In *Estate of Bluestone*, multiple guarantors guaranteed a restaurant's performance of certain

leases and loans concerning restaurant equipment. *Id.* at 447–48. The restaurant defaulted on its initial obligations, and the parties agreed to restructure the transactions. *Id.* None of the guarantors were notified of the restructuring arrangements. *Id.* The restaurant again defaulted and filed for bankruptcy; an action was brought against the guarantors for payment. *Id.* The guarantors sought to discharge their liability under the guaranty. *Id.* The guaranty provided that the guarantors

> agree that the holder of said lease may from time to time extend or renew said lease for any period whatsoever and grant any releases, compromises or indulgences with respect to said lease or any extension or renewal thereof or any security therefor or to any party liable thereunder or hereunder, all without notice to or consent of any of the undersigned and without affecting the liability of any of the undersigned hereunder.

*Id.* at 450 n. 2. After citing this consenting provision the court held, "The fact that the guarantors expressly waived notice to future modifications demonstrates that they 'anticipated' the possibility of such modifications. Hence, any refinancing agreements which modified [the original] obligations did not operate to discharge the guarantors, even if the modifications were material." *Id.* at 450.

Like in *Estate of Bluestone*, Patel expressly waived notice to future modifications of the Lease; the express waiver of notice in the Guaranty demonstrates that he "anticipated" the possibility of modifications. The

Agreement does not operate to discharge Patel's liability, even though the interest modification was material. *See also Harvard Drug Group, LLC v. Linehan*, 684 F. Supp. 2d 921, 926–27 (E.D. Mich. 2010) (modification of an agreement that added interest to the original obligation did not operate to discharge guarantor where guaranty expressly waived notice to future modifications).

Both parties misapply the second holding in *Estate of Bluestone* that addressed one guarantor who signed a guaranty without an express consent to modifications and waiver of notice. 329 N.W.2d at 450. As to that guarantor, the court determined first that the refinancing agreements did not amount to a material alteration because they did not extend the time of payment or impose additional interest. *Id.* at 451. Next, the court determined that the refinancing agreements "did not operate to the guarantors' detriment, but rather to their benefit" because they "were intended to ease [the] obligation by extending the time for payment without imposing any additional interest." *Id.* Therefore, the court held that "the refinancing agreements [did] not operate to discharge the guarantors' liability." *Id.* This holding as to Patel is inapposite because the Guaranty did contain a consent to modifications and waiver of notice and because the Agreement did not operate to the Guarantors' benefit as it imposed additional interest.

Patel also argues that Budget Inns "acknowledged the need for the

guarantors to consent to any material alterations by requiring that the guarantors sign the [Agreement]." (Doc. 29 at 14.) However, the consent and waiver in the Guaranty controls over the Agreement—signed or unsigned—because the Guaranty anticipated as a possibility a future modification of the Lease. *See Harvard Drug Group*, 684 F. Supp. 2d at 927 ("not absolutely necessary" to obtain guarantor's signature on modification due to consent and waiver in guaranty).

In sum, by the clear language of the Guaranty, Patel is liable for Bridgeport's liability, and, given the express consent to modifications and waiver of notice contained in the Guaranty, the Agreement does not operate to discharge Patel's liability. There are no genuine issues of material fact, and Budget Inns is entitled to summary judgment on this issue as a matter of law.

**II.     Whether the default judgment is the proper measure of damages.**

Budget Inns claims that the Michigan court default judgment against Bridgeport properly set forth Bridgeport's liability under the Lease, and therefore the judgment establishes the measure of damages for which Patel is liable. The Michigan court entered judgment in the amount of $2,707,111.47, which includes: the total amount of rent, taxes, interest, late fees, and bank fees incurred to date plus the total amount of rent, tax payments, insurance, utilities, and maintenance

costs for which Bridgeport would be responsible to the end of the Lease term plus attorney fees and legal costs incurred. (Doc. 21 at 15.) Budget Inns claims it is also entitled to additional attorney fees and costs associated with this action. (*Id.* at 16.)

Patel asserts that the default judgment against Bridgeport is not binding against him, and Budget Inns does not offer an argument contesting this assertion. Michigan surety law guides the determination of this issue. *See Emmet Land Co. v. Harbor Springs Real Estate Corp.*, 2002 WL 57389, at *3 n. 3 (Mich. App. Jan. 15, 2002) (relying on surety law to determine effect of prior judgment on guarantor); *see also Comerica*, 805 N.W.2d at 548–49 (relying on surety law to determine interpretation of guaranty). In *P.R. Post Corp. v. Maryland Casualty Co.*, the Michigan Supreme Court held that a judgment against a principal debtor is not conclusively binding on a surety, and it is only "admissible as Prima facie evidence in a suit by the obligee against the surety." 271 N.W.2d 521, 524 (Mich. 1978). The Court relied on § 139(2) of the *Restatement (First) of Security*. *Id.* at 523 n. 1. The *Restatement* also addresses the admissibility of a *default* judgment:

> When, in an action by the obligee against the principal obligor to enforce the underlying obligation, a judgment in favor of the obligee is obtained by default, confession, stipulation, or the like, the judgment against the principal obligor is evidence only of its rendition in a subsequent action of the obligee against the secondary obligor to

enforce the secondary obligation.

*Restatement (Third) of Suretyship & Guaranty* § 67(3) (1996) (formerly *Restatement of Security* § 139 (1941)). The comments explain:

> The rule set forth in subsection (3) differs from that in subsection (2) because the probative significance of a judgment obtained by confession, default, or the like is much less than that of a judgment after trial on the merits. Moreover, the arguments of policy and efficiency against duplication of trials have little weight where there has not been a determination made by a fact finder after consideration of evidence introduced by both sides to the litigation. Thus, a judgment against the principal obligor obtained by default, confession, or the like does not create a presumption in favor of the principal obligor's liability in the subsequent action by the obligee against the secondary obligor; rather such a judgment is evidence only of its rendition.

*Id.* cmt. c. The default judgment against Bridgeport, therefore, does not establish, as a matter of law, the measure of damages against Patel.

Additionally, Patel insists that there are genuine issues of material fact as to the appropriate amount of damages. (Doc. 29 at 14–17.) Budget Inns states that as of November 18, 2013, the amount due and owing is $2,707,111.47 based on the default judgment, but Patel disputes this calculation of the damages. (Doc. 30 at ¶ 28.) Patel asserts that the default judgment is based on "several inappropriate amounts" and contests the liquidated damages; damages for maintenance, insurance, and utilities; interest and late penalties; tax payments; and attorney fees and costs. (Doc. 29 at 18–22.) Patel also argues that Budget Inns has failed to

minimize damages. (*Id.* at 23.) Budget Inns maintains that "Bridgeport left the Property in a very poor and damaged condition, and many items of personal property belonging to [Budget Inns] were missing." (Doc. 30 at ¶ 13–15.) Patel states that he "does not have any knowledge or information concerning the condition of the property and further discovery is necessary on this issue." (*Id.*) Budget Inns states that it is "unable to re-let the Property, due in significant part to the current physical condition of the Property" and "all attempts at . . . selling the property have been unsuccessful," but Patel disputes the reasons why the Property has not been re-let. (*Id.* at ¶ 16.) Budget Inns states that the costs of repairing the Property and preparing it for re-rental would be in excess of $250,000 to 300,000, but Patel disputes this calculation "due to the stage of discovery." (*Id.* at ¶ 17.) Budget Inns states it does not have the resources to pay for the needed repairs, but Patel insists Budget Inns likely does have the resources based on the consent judgment submitted by the Muthukumar Guarantors. (*Id.* at ¶ 18.) Most importantly, Patel points out that discovery is not yet complete and that he has not had the opportunity to depose the Manager of the Property, John Burns, who has collected pertinent information as to the condition of the Property and the efforts to re-let or sale the Property. (*See* Joint Discovery Plan, Doc. 9 at 3 ("All discovery shall be completed by February 15, 2015.").)

In its reply brief, Budget Inns acknowledges the potential impact of the recent consent judgment submitted by the Muthukumar Guarantors and states that "if the Court were to conclude that the default judgment is not the proper measure of damages, [Budget Inns] acknowledges that fact issues may preclude summary judgment as to the amount of damages that should be awarded against Patel on the breach of the Lease and Guaranty." (Doc. 32 at 14.) Therefore, because the default judgment does not establish, as a matter of law, the proper measure of damages, and because genuine factual disputes remain, Budget Inns is not entitled to summary judgment on the issue of damages.

Accordingly, IT IS ORDERED that Plaintiff's Motion for Summary Judgment (Doc. 20) is GRANTED IN PART and DENIED IN PART. The Motion is GRANTED in that Defendant is jointly and severally liable to Plaintiff for Bridgeport Hospitality, LLC's liability under the terms of the Lease and Guaranty. The Motion is DENIED in all other respects.

DATED this 5th day of January, 2015.

DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT